## UNITED WATERWORKS CO., Limited, v. STONE.

### (Circuit Court, D. Massachusetts. January 20, 1904.)

### No. 1,293.

1. CORPORATIONS—REORGANIZATION AGREEMENT BY BONDHOLDERS—POWERS OF COMMITTEE.

Holders of bonds of a water company which had defaulted in payment of interest entered into a written agreement by which they deposited their bonds with a trustee, taking certificates therefor, and appointed a committee to act for the protection of their interests by foreclosing the mortgage, and with power under certain conditions to buy in the property, and convey it to a new company to be organized, allotting "to the certificate holders their proportionate interests in the new company." It was further provided that prior to such conveyance the committee should submit to the certificate holders "a detailed plan" of reorganization, which should be binding on all said holders unless a majority in interest should file dissents with the trustee within 30 days. *Held*, that the power of the committee was limited to the submission of a detailed plan conforming to the general provisions of the agreement, and which should be in the interest of the certificate holders, and that one which was repugnant to the agreement, and largely in the interest of themselves and of certain stockholders, did not become binding on a certificate holder because a majority did not file dissents therefrom.

2. CONVERSION—RIGHT OF ACTION—ALLEGATIONS OF DECLARATION CONSIDERED.

A declaration in an action to recover the value of certain certificates alleged to have been converted by defendant as trustee construed on demurrer, and *held* to state a cause of action.

At Law. On demurrer to declaration.

Anson M. Lyman, for plaintiff.

L. S. Dabney and Robert B. Stone, for defendant.

HALE, District Judge. This is an action at law. It comes before the court on defendant's demurrer to plaintiff's declaration. The declaration contains five counts. After properly setting forth the jurisdictional facts, the first count alleges that the defendant has converted to his own use 10 negotiable certificates of deposit of the American Waterworks Company, issued by the Farmers' Loan & Trust Company, for a thousand dollars each, bearing 6 per cent. interest, the same being the property of the plaintiff. Exhibit A shows the form of the certificates, and that they were issued by the Farmers' Loan & Trust Company for bonds of the American Waterworks Company of Illinois, deposited in accordance with agreement dated August 16, 1893; and that by receiving the certificates the holder thereof was bound by the provisions of said agreement. Copy of the agreement of August 16, 1893, is made a part of the declaration, and marked "Exhibit B." It purports to be an agreement between the holders of bonds of the American Waterworks Company of Illinois for the purpose of protecting their interests through the agency of the committee named therein. It will be seen that this first count is a formal count in trover in the statutory form provided for by the Revised Laws of Massachusetts.

The second count contains a full statement of the cause of action. After setting forth the facts from which the court derives jurisdic-

tion, it alleges: That the plaintiff was the owner of 10 bonds described in the first count, which were of an authorized issue of $4,000,000 in bonds of like tenor, $3,600,000 of which were issued and outstanding, secured by deed of trust on certain waterworks owned by the company, to the Farmers' Loan & Trust Company as trustee; that, default having been made in the payment of interest, a bondholders' committee was organized for the purpose of securing the deposit of said bonds with the Farmers' Loan & Trust Company, and of combining the bondholders in a plan to foreclose the mortgage and protect their interests; this plan was fully set forth in an agreement dated August 16, 1893, and in a circular letter sent to the bondholders dated August 30, 1893, copies whereof are made a part of the declaration, and marked "Exhibit B" and "Exhibit C"; the defendant, being one of the directors of the plaintiff corporation, and its attorney, deposited the plaintiff's bonds of the par value of $10,000 with the Farmers' Loan & Trust Company, and the trust company duly issued and delivered to the defendant its certificate of deposit for each of said bonds in the form set out in "Exhibit A," above referred to, and made a part of the declaration; that the defendant received the 10 certificates of deposit for said bonds, and held the same as property of the plaintiff corporation and as its custodian, and was under the duty of holding said receipts for the benefit of the plaintiff corporation, and subject to its order and direction; that thereafter, while the 10 certificates of deposit were in possession of the defendant as plaintiff's property, the bondholders' committee issued and distributed among the bondholders a plan of reorganization, dated June 9, 1896, a copy of which is made a part of the declaration, and marked "Exhibit D"; that copies of this plan were received by the plaintiff and defendant; that this plan of June, 1896, differed substantially from the bondholders' agreement of August, 1893, under which the bonds were deposited. Then follows a statement of the particulars wherein the plan of 1896 differed from the bondholders' agreement of 1893, substantially as follows: The authorized capitalization of the Omaha Water Company, the organization of which was set forth in the committee's plan, was in excess of the real value of the property bought by the trustee and conveyed to the defendant, this authorized capitalization being in the form of bonds, common stock, and preferred stock issued by it and placed in control of the committee, and that the plaintiff was not obliged to accept any part of said capitalization under the plan of June, 1896; that the provision for the organization of the voting trust under the detailed plan of reorganization of June, 1896, to control and direct the operation of the Omaha Water Company, and the provisions for paying expenses of such control were unauthorized, and deprived the plaintiff of its right to participate in the government and benefits of the property in which he was jointly interested with the other bondholders; that the provision in the plan of June, 1896, for the issue of two and a half millions of the common stock of said Omaha Water Company, and for its sale to the owners of preferred stock of the American Waterworks Company at 10 per cent. of its par value, was unauthorized, and not binding on the plaintiff; that the Omaha Water Company was or-

ganized by the committee, and has since been under its control and management by means of the said voting trust, and when it accepted the deed from the Farmers' Loan & Trust Company, the trustee, that water company necessarily had notice of the terms of the mortgage made by the American Waterworks Company to secure the payment of the bonds and the terms and limitations of the deed from the master in chancery to the trustee; that the members of the committee bore to the plaintiff the relation of trustees for the purposes and under the limitations set forth in the bondholders' agreement of August, 1893; that the provisions of the detailed plan of June, 1896, would injuriously affect and change the rights of the plaintiff under the bondholders' agreement of August, 1893; that the plaintiff, as holder of part of an issue of $3,600,000, was secured by a lien second to a first lien of only $400,000, while under said plan of June, 1896, it was to be awarded only a part of a much larger issue of bonds secured by a lien subordinate to a first lien much larger than $400,000; that in February, 1894, the defendant ceased to be a director in the plaintiff corporation and to be its attorney or agent, but continued to hold the said 10 certificates of deposit as its property. The second count concludes as follows:

"And the plaintiff further says that, notwithstanding the substantial and material difference between the two plans, and notwithstanding his knowledge that the plaintiff had then pending in the Supreme Court of New York against the Farmers' Loan & Trust Company and others, a suit to enjoin the carrying out of and to declare invalid the plan of reorganization described in Exhibit D, the defendant, on or about the 26th day of December, A. D. 1896, surrendered to the Farmers' Loan & Trust Company the said 10 certificates of deposit issued by said trust company for the $10,000 of American Waterworks Company bonds without the knowledge, consent, or authority of the plaintiff, and contrary to its wishes, as the defendant then and there well knew, not in accordance with the terms of said agreement dated August 16, 1893, and said circular letter dated August 30, 1893, but in accordance with a different plan of reorganization, being the plan more fully set forth in Exhibit D annexed to this declaration, which this plaintiff had refused to accept, as this defendant well knew, to the plaintiff's great loss, injury, and damage."

The other counts set forth the cause of action to substantially the same effect as the second count.

The third count contains a similar statement of the matters in which the detailed plan of 1896 differed from the bondholders' agreement of 1893, and of the particulars in which said plan of 1896 was unauthorized, and not binding on the plaintiff. It further alleges that on receipt of the copy of the plan of 1896 by the plaintiff he gave notice to the trust company and the bondholders' committee to return the bonds, and notified the committee that its issue of the $10,000 represented by the certificates of deposit in the hands of the defendant was forbidden, and that, being unable to obtain the return of the bonds, the plaintiff began legal proceedings in the courts of Maine and New York for the purpose of restraining the plan of reorganization of June, 1896, and for further relief; that in those legal proceedings in the state of New York in the Supreme Court and in the Court of Appeals it was determined by the court that depositing bondholders who had not assented to the plan of reorganization of June, 1896, were not bound by its provisions, and that such

depositing bondholders were entitled to recover for each bond held by them in the sum of $1,219 and interest; that these suits were brought and notice was given with the full knowledge of the defendant, but that the defendant, during the pendency of the suits, without authority from the plaintiff, and without notice to it, and without its knowledge and consent, and contrary to its wishes, surrendered to the Farmers' Loan & Trust Company the said certificates of deposit. And the allegation follows that, in consequence "of the defendant's acts as aforesaid, the plaintiff's suit to the extent of the plaintiff's then interest therein was necessarily terminated, whereby the plaintiff was unable to obtain the relief it sought for in said suit, and whereby the plaintiff has lost the sum of twelve thousand one hundred and ninety-two dollars and thirty-three cents and interest thereon, being the value of said ten certificates of deposit surrendered by the defendant as aforesaid, and also the value as determined both by the Supreme Court and the Court of Appeals of New York as hereinbefore set forth."

The fourth and fifth counts contain briefer, but substantially similar, statements of the cause of action.

The demurrer sets forth five assignments of causes, as follows:

(1) That no legal cause of action is set forth in said amended declaration, or in any count thereof.

(2) That the matters contained in said amended declaration, and in each count thereof, in manner and form as therein stated and set forth, are not sufficient in law for the said plaintiff to maintain his said action against the defendant.

(3) That it is not alleged in said amended declaration, or in any of the counts thereof, that the holders of the majority in interest of the outstanding certificates did within 30 days file with the trust company their dissents from the detailed plan of reorganization submitted to them by the committee, as provided in paragraph numbered 12 in the agreement of bondholders dated August 16, 1893, a copy whereof is annexed to said amended declaration, and marked "Exhibit B."

(4) That it is not alleged in said amended declaration, or in any of the counts thereof, that the price at which it was proposed in the detailed plan of reorganization to offer the beneficial certificates pertaining to the common stock of the new company to the holders of preferred stock of the American Waterworks Company of New Jersey was less than full value of said certificates, a copy of said detailed plan of reorganization being annexed to the plaintiff's declaration, and marked "Exhibit D."

(5) That it is not alleged in said amended declaration, or in any of the counts thereof, that the action provided for in the detailed plan of reorganization, copy whereof is annexed to the plaintiff's amended declaration, and marked "Exhibit D," was not approved of and consented to by the holders of a majority in interest of the outstanding certificates, as provided in section numbered 14 of the bondholders' agreement, dated August 16, 1893, copy whereof is annexed to the plaintiff's amended declaration, and marked "Exhibit B."

The first two assignments of causes of demurrer bring before the court the question whether the declaration, aside from all questions of

form, does or not, in substance, set forth a cause of action. The second count in the declaration tells the substantial story of the case. The plaintiff corporation owned certain bonds secured by a mortgage given to the Farmers' Loan & Trust Company upon a certain water-works plant at Omaha. The bonds being in default, a bondholders' committee was organized to act for the protection of the interests of the bondholders. The defendant, acting for the plaintiff as director and as counsel, gave the bonds to the committee under a bondholders' agreement which the committee had prepared and sent to the several bondholders of the defaulting company. That agreement, thus entered into, was by its terms for the purpose of "protecting the interests" of the bondholders. The committee, according to the opening paragraph, undertook to carry out the agreement.

It is necessary for the court now to consider precisely what that agreement as pleaded was. The first section, naming the committee, gives them power to add to their number and fill vacancies. It provides for meetings, and that the action of the committee shall be taken by a majority, and it limits the personal liability of the members of the committee.

The second section provides for the transfer of bonds and coupons to the committee, and for the issue of receipts for the same.

The third section empowers the committee to take any action under the mortgage which the depositors could have taken, and to foreclose the mortgage as soon as possible.

The fourth section authorizes the committee, in case a majority of the bonds shall be deposited, to purchase the property covered by mortgage at foreclosure at a limited maximum price, and to apply the bonds and coupons in payment for the property.

The fifth section gives the committee the power to acquire by deed any of the bonds, to the amount of $400,000, secured by an underlying mortgage, and to buy the property on any foreclosure of said underlying mortgage, and to transfer the property so brought to a new company, to be provided for in the agreement.

The sixth section gives the committee power to convey the property so purchased to a new company, or to otherwise dispose of it at minimum prices stated in the section.

The seventh section authorizes the committee to sell the bonds and coupons for not less than the principal and interest and all expenses and charges of the trustee and of the committee.

The eighth section authorizes the committee for certain purposes to assess the certificate holders, or to borrow money, and pledge any other assets in their hands for repayment, for the purpose of carrying out the provisions of the plan.

The ninth section provides for the compensation of the committee.

The tenth section provides that each bondholder, on depositing his bonds, shall pay on account of expenses $10, and authorizes the committee to make further assessments on the certificate holders. The letter accompanying this agreement provides as follows:

"That any assessment which the committee may make for legal and other expenses, on holders of certificates issued for deposited bonds, in addition to the payment at the time of deposit, will not exceed ten dollars per bond."

The eleventh section is as follows:.

"The committee shall, after payment of the expenses of foreclosure and all expenses incurred by the committee and its compensation, allot to the certificate holders their proportionate interests in the new company, or their proportionate share in the proceeds of any sale by the committee."

The twelfth section provides as follows:

"The committee shall, prior to the conveyance of any purchased property to a new company, submit to the certificate holders a detailed plan of reorganization, which shall be binding upon all said holders, unless the holders of a majority in interest of the outstanding certificates shall, within thirty days, file with the trust company their written dissent from said plan."

The thirteenth section provides the mode by which notices shall be given by the committee to the holders of certificates.

The fourteenth section is as follows:

"The committee may supply any defects or omissions in this plan, which it shall deem necessary to be supplied, to enable the committee to carry out the general purposes of the plan, and with the consent of the holders of a majority in interest of the outstanding certificates may take any action other than provided for in this plan which the committee shall unanimously determine to be for the benefit, ratably, of all the certificate holders."

The fifteenth section authorizes the committee to fix the time within which bonds and coupons will be deposited and to grant extensions. The sixteenth section authorizes the committee to return deposited bonds and coupons, and to cease from its undertaking in case a majority of the bonds shall not have been deposited within a certain limited time. It also gives the privilege of depositing the bonds before November 1, 1893.

Under this agreement, as set out in the declaration, the bondholders deposited with the trust company their bonds and accepted the certificates of deposit, those certificates remaining in the hands of the defendant. It will be remembered that under this agreement, in section 12, there was a provision that the committee should, prior to the conveyance of any property to a new company, submit to the certificate holders a detailed plan of reorganization. In June, 1896, the committee did prepare a paper headed "Detailed Plan of Reorganization," which they issued and distributed among the depositing bondholders. The plaintiff alleges in the third count that this plan of reorganization of June, 1896, differed in substantial and material respects from the original agreement under which the bonds were deposited. The count sets forth various particulars in which it is alleged to have differed. It may be that it would have been sufficient if the plaintiff had contented himself with this statement that the plan of reorganization differed from the bondholders' agreement, setting forth wherein it was different, and claiming that by the departures from that agreement the plaintiff was damaged. But the plaintiff has gone further, and has pleaded the plan of reorganization, and made it a part of his declaration, and has thus made it incumbent on the court to examine the terms of the agreement and of the plan as a part of the pleadings. Was the detailed plan of June, 1896, as pleaded, in accordance with the bondholders' agreement? Did it merely provide details for that agreement, or was it inconsistent with and contrary to the provisions of that agreement? It seems clear

that the agreement was intended to provide a plan of reorganization. It seems clear that it was intended to be the source and limit of all the power which the committee had in the premises. The bondholders, then, having by their agreement provided one scheme of reorganization, evidently did not intend for the committee to provide another. But the intention, as gathered from the pleadings, was clearly to limit the detailed plan of reorganization to be prepared by the committee to a plan carrying out in detail the general provisions of the bondholders' agreement. When we consider the whole spirit and meaning of the agreement, and try to arrive at the intention of section 12 in providing for a detailed plan, we must believe that much of the force of that section resides in the word "detailed." The spirit of the section seems to be the same as if it had provided specifically that the committee, following the general terms of the agreement, should issue the details of the plan of reorganization. It was based upon the idea that the agreement contained the substance of the plan of reorganization, and that the power given to the committee was merely to prepare the details in substantial accord with the general provisions of the bondholders' agreement. Do the pleadings show that the detailed plan of reorganization of June, 1896, merely furnished details for the original agreement? Or did it constitute an entirely different plan, not within the meaning of the bondholders' agreement? It must be remembered that the committee bore to the plaintiff, as depositing bondholder, the relation of trustee under the limitations of the agreement. Does the plan submitted by that committee and pleaded in the declaration go beyond their powers as such trustee, and provide a plan not within the intention of the agreement? After careful comparison of the agreement and of the plan, it appears to the court that the plan as pleaded in the declaration provides a scheme of reorganization substantially and materially different from anything within the intention of the bondholders' agreement, and in some important particulars repugnant to it. It is not necessary to recite the plan in terms. It is sufficient to say that the court is satisfied that it does differ from the agreement in the particulars pleaded specifically in the declaration; that it does not carry out the terms of the bondholders' agreement; that, instead of providing minor particulars necessary to complete a reorganization, it changes the bondholders' agreement into an agreement largely for the benefit of certain stockholders and of the committee themselves, and that thus, instead of being in pursuance of the agreement, it contravenes and annuls it. It follows, then, that although bound by the bondholders' agreement, the plaintiff is not bound or concluded by the committee's plan.

But do the pleadings show that the defendant recognized the committee's plan in the surrender of the certificates? The learned counsel for the defendant urges that the recital in the plaintiff's declaration that, in consequence of the surrender of the certificates the plaintiff's suit in New York was necessarily terminated, and its rights concluded, is merely an averment of a matter of law, and is not correct. The learned counsel may be right in this contention, but the court cannot on demurrer pass upon the correctness in point of fact of any

of the allegations in the declaration. We are held strictly to an examination of the pleadings. It will be seen, however, that the plaintiff has affirmatively alleged the deposit of the bonds with the committee under their agreement, and that afterwards, without authority from the plaintiff, and contrary to its wishes, the defendant surrendered the certificates of deposit to the trust company, not in accordance with the terms of the agreement of August, 1893, but "in accordance with a different plan of reorganization," namely, with the committee's plan, which is fully pleaded in the declaration. This allegation that the bonds were deposited in accordance with the plan of June, 1896, and not in accordance with the bondholders' agreement, is an allegation of fact and of substance, and must be regarded.

The third cause of demurrer sets out that it is not alleged in the declaration that the holders of a majority in interest of the outstanding certificates did, within 30 days, file with the trust company their dissents from the detailed plan of reorganization submitted to them by the committee, as provided in the twelfth paragraph of the bondholders' agreement. We have already held that the plan of reorganization was not in substantial accord with the bondholders' agreement. It cannot, then, be possible that by this provision which is invoked in the third cause of demurrer it can be made incumbent upon the holders of the certificates to dissent from the detailed plan so far as that plan is inconsistent with the agreement, and it cannot be that their failure to dissent from that plan can preclude them from the advantages of the agreement, or can conclude them in opposing a plan which is repugnant to the agreement. The clause as to dissent was placed in the agreement as a consistent part of the theory that the committee's plan was to provide merely the details for the bondholders' agreement; and that the holders of the certificates should properly file their written dissents from any of the details of the plan in case they should not agree to any of the particulars presented by it. So far, then, as the committee's plan was a detailed plan under the agreement, and provided merely minor particulars necessary to complete the reorganization, so far the holders of the majority of the outstanding certificates were properly bound to file their dissents from any objectionable detail of the plan. But we have found that the committee's plan was in excess of the powers of the committee and was repugnant to the agreement and beyond the authority given to the committee by that agreement. The failure, then, to dissent from a plan which was not in accord with the agreement, cannot put it into accord with the agreement; and we must hold that this provision as to the 30 days' dissent has no effect upon the plan, and is immaterial. This cause of demurrer cannot be sustained.

The fourth cause of demurrer alleges that the declaration does not set out that the price at which it was proposed in the detailed plan of reorganization to offer the beneficial certificates pertaining to the common stock of the new company to the holders of preferred stock of the American Waterworks Company was less than the full value of the certificates. We have already found that the committee's plan, as pleaded, was intended to be for the protection of bondholders only. The declaration sets out injuries to the plaintiff as a bondholder. The

agreement of August, 1893, was for the benefit of bondholders. The committee, as appears by the pleadings, had no right to do anything further than to protect the bondholders. The rights of the plaintiff, under the pleadings, cannot be extended to a consideration of questions pertaining to the common stock of the new company. The matters suggested by this cause of demurrer may be very important in the consideration of the evidence in the case, but upon demurrer we are concerned only with the face of the pleadings. This cause of demurrer cannot be sustained.

The fifth ground of demurrer states that it is not alleged in the amended declaration that the action provided for in the detailed plan of reorganization was not approved of and consented to by a majority of the holders in interest of the outstanding certificates, as provided in section 14 of the bondholders' agreement. A fair construction of the pleadings shows that the scope of the committee's work was supplemental to the plan and agreement of August 16, 1893, and that the committee itself so recognized that such was the scope of its work. The meaning of the latter part of section 14 seems to be that if the committee, instead of attempting to proceed in pursuance of the agreement of 1893, had determined upon an absolute change in their plan of foreclosure and reorganization; if they had determined, for instance, as the counsel for plaintiff suggests, to loan money to the old company to carry on its business without attempting a foreclosure— then it would have been incumbent upon the committee to have obtained from the majority in interest of the outstanding certificates a consent to such action "other than is provided in the plan" of 1893. It is not clear that this state of facts did not arise. Under the attitude of the pleadings it is not consistent for the defendant to set up that such other action was taken which required the consent of the outstanding certificates. An allegation in the plaintiff's declaration that a majority of the holders of outstanding certificates did not assent to the plan of the committee would have been an immaterial allegation. This ground of demurrer must be overruled.

Many considerations which have been urged with great force and ability by learned and eminent counsel seem to the court to pertain to a discussion of the case which is not competent on demurrer. Some of these considerations appear to be important, and may be vital and controlling when the case is tried upon the evidence; but the court upon demurrer can consider only the allegations of the declaration. Those allegations appear sufficient to state a cause of action. It is unnecessary to decide whether the first count does not in itself constitute a sufficient declaration under the doctrine of the Supreme Court in McAllister v. Kuhn, 96 U. S. 87, 24 L. Ed. 615, a conversion having been pleaded, and the ultimate fact to be proven having been stated in that count. All the contention has, however, been directed to the other counts of the declaration, and so the court has addressed itself to them.

The decision must be that the declaration is sufficient to set forth a cause of action. The result must be that the demurrer is overruled, defendant to answer further.